# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN COIT,** | : | **CIVIL ACTION** |
| *Plaintiff, pro se,* | : | |
| | : | **NO. 21-1568** |
| **v.** | : | |
| | : | |
| **JAIME SORBER, *et al.*,** | : | |
| *Defendants.* | : | |
| | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    SEPTEMBER 12, 2025

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Kevin Coit ("Plaintiff"), proceeding *pro se*,[1] filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Sorber, Hensley, Calpino, Spivey, Gilliard, Nyce, and Olivieri[2] (collectively, "Defendants"), in their individual capacities, averring that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution when he was at the State Correctional Institution at Phoenix ("SCI-Phoenix").

---

[1]      On July 14, 2022, Plaintiff filed a motion for the appointment of counsel. (ECF 30).  By Order dated September 19, 2022, this matter was referred to the Prisoner Civil Rights Panel for counsel's consideration and placed in civil suspense.  (ECF 32).  On January 23, 2023, Plaintiff filed a notice requesting his case be removed from the Prisoner Civil Rights Panel.  (ECF 35).  By Order dated March 3, 2023, the motion was granted, and the case was removed from the panel.  (ECF 39).

[2]      Plaintiff's complaint initially included claims asserted against Defendants Terra, Hernandez, Koehler, Sealas, Klemas, Orlando, and Owens.  (ECF 2).  By Order dated November 8, 2021, this Court granted Defendants' motion to dismiss these Defendants.  (*See* ECF 15).  Additionally, all claims against the remaining correctional officers in their official capacity were dismissed.  (*Id.*)

Plaintiff's complaint also avers claims against Defendant Glushkow.  (ECF 2).  Notably, Defendant Glushkow did not join in the underlying motion for summary judgment.  (ECF 51).  Upon a review of the official record, it does not appear that Defendant Glushkow has been served.  Accordingly, this Court will issue a separate Order addressing the claims against Defendant Glushkow.

Defendants' summary judgment motion, as well as his complaint, identify many of the Defendants by their last names only.  (ECF 2, 51).  This Court adopts this custom.

Specifically, Plaintiff contends that Defendants violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment, violated his First Amendment rights through unlawful retaliation, and violated his Fourteenth Amendment right to due process.

Presently, before this Court is Defendants' motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, which argues that Plaintiff has failed to sufficiently show that the Defendants acted with deliberate indifference and/or violated Plaintiff's constitutional rights.  (ECF 51).  Plaintiff opposes the motion.  (ECF 53).  The issues presented in Defendants' motion are fully briefed and ripe for disposition.

For the reasons set forth herein, Defendant's motion for summary judgment is granted as to all claims and theories of liability[3] except as follows:  (1) Plaintiff's Eighth Amendment claim against Defendant Gilliard related to the self-harm incident on January 31, 2021, and (2) Plaintiff's retaliation claim against Defendants Gilliard and Olivieri.  For these two remaining claims, this Court finds a factual dispute exists regarding whether Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. Accordingly, pursuant to *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) and *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018), this Court will require additional briefing on this issue.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and the supported relevant facts in the light most favorable to the non-movant — here, Plaintiff.

---

[3] Because Plaintiff does not fashion his claims as "counts," it is unclear which specific theories of liability he is bringing against the remaining defendants.  (*See* ECF 2).  To avoid any  doubt, this Court grants the motion as to ***all*** theories of liability except those expressly detailed herein.  This includes, *inter alia*, any theory of liability related to a denial of visitation, denial of attendance of a court proceeding, and denial of "a fair chance at trying to make [Plaintiff's] programs for parole."  *(Id.* at pp. 10, 11, 13).

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004), *as amended* (Aug. 12, 2004). The facts relevant to the underlying summary judgment motion are summarized as follows and are derived primarily from the narrative provided by Plaintiff at his deposition, (ECF 51-2):[4]

At his deposition, Plaintiff testified to his various grievances. Specifically, around October 22, 2020, he was placed in a single cell at SCI-Phoenix. (ECF 51-2, at p. 11). Plaintiff testified that he did not file a grievance at that time because "it wasn't a serious offense." (ECF 51-2, at p. 12).

On October 23, 2020, November 6, 2020, and November 15, 2020, Plaintiff was denied the opportunity to participate in scheduled video visits. (ECF 51-2, at pp. 12-20). For these denials, Plaintiff filed a grievance on November 16, 2020, contending that "[f]or the third time in three weeks i [*sic*] have not been able to receive my visits." (ECF 51-5). Plaintiff further testified that he assumed the denial of his visits "was due to me filing my grievances and stuff like that." (ECF 51-2, at p. 20). Notably, Plaintiff's grievance does not indicate that he was denied visitation because he was filing grievances. (ECF 51-5). Plaintiff testified that he was "not sure if I got a response to [his November 16, 2020 grievance,] but if I got

---

[4]     These facts are taken from the parties' briefs and exhibits, including Plaintiff's deposition which was taken on June 2, 2023. (ECF 51, Ex. A). To the extent that a specific fact is disputed by Defendants, such dispute will be noted and, if material and supported by record evidence, will be construed in Plaintiff's favor. Defendants broadly dispute Plaintiff's version of events and note that Plaintiff has filed at least eleven cases against the Pennsylvania Department of Corrections and that "[a]s with each iteration of litigation, Plaintiff creates conflict and then sues when measures are taken to stop him." (ECF 51, at p. 1).

As Plaintiff is proceeding *pro se,* his documents are "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[T]he same standards for summary judgment apply to *pro se* litigants." *Edwards v. Rice-Smith*, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (quoting *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009)). Therefore, as the party opposing summary judgment, Plaintiff must "present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Id.* (quoting *Watson*, 629 F. supp. 2d at 485).

Rule 56 provides that a party asserting that a fact is disputed must support or oppose the assertion with evidence. *See* Fed. R. Civ. P. 56(c)(1)(A) (instructing that facts must be supported or opposed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."). Thus, in deciding the motion for summary judgment, this Court will consider the exhibits attached to Plaintiff's complaint, exhibits attached to Plaintiff's opposition to Defendants' summary judgment motion, and the exhibits attached to Defendants' summary judgment motion. This Court will not consider new claims that Plaintiff appears to raise in his summary judgment brief. *See Jones v. Treece*, 774 F. App'x 65, 67 (3d Cir. 2019) ("A plaintiff generally 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment'").

a response to that request – I mean, to that grievance then I appealed it."[5] (ECF 51-2, at pp. 21-22).

On November 24, 2020, Plaintiff pressed a button in his cell and expressed to a correctional officer that he was suicidal. (ECF 51-2, at p. 24). According to Plaintiff, the correctional officer encouraged Plaintiff to kill himself. (*Id*.). Plaintiff then broke the window and utilized the glass to "engage in self-injurious behaviors." (*Id*.). Plaintiff does not know who responded to him and that person is not a Defendant in this action. (*Id*.).

On November 27, 2020, Plaintiff was denied a scheduled video visit related to his brother passing away. (ECF 51-2, at p. 31). Plaintiff filed a grievance about this incident but never received a response to it. (*Id*.).

On December 3, 2020, Plaintiff filed a grievance related to his conditions of confinement. (ECF 2-1, at p. 45). The grievance provides that after four days of "complete confinement" he had not been offered one hour of recreation. (*Id*.). The grievance also noted that he was not being provided with mental health treatment, which was "worsening" the state of his mental health. (*Id*.).

In early December, Plaintiff attempted to send money to his family, but it was never sent to his family.[6] (ECF 51-2, at pp. 33-34). Plaintiff does not name any prison official who was involved in preventing him from sending funds to his family. (*Id*.). Plaintiff also contends that he had difficulty speaking to his lawyer, who was being "stonewalled by staff." (ECF 51-2, at pp. 36-37). Plaintiff also does not name any prison officials who prevented him from contacting his attorney. (*Id*.). Plaintiff testified at the deposition that Defendant Olivieri commented that if his grievances were withdrawn or disappeared, it would be easier for him.[7] (ECF 51-2, at pp. 39-40).

On December 22, 2020, Plaintiff felt suicidal, and he asked Defendant Nyce for a transfer to the psychiatric observation cell. (ECF 51-2, at p. 41). Defendant Nyce called him a "pussy" and "became threatening." (ECF 51-2, at p. 42). Plaintiff then broke a window and utilized the glass to cut his wrist. (ECF 51-2, at

---

[5]    Defendants attach the response to Plaintiff's November 16, 2020 grievance to their summary judgment motion. (ECF 51-5). The response provides that SCI Phoenix was having technical issues with the visits. (*Id*.). Further, Defendants note that Plaintiff included this response in his complaint. (ECF 2, ¶ 9; ECF 51-2, at p. 22).

[6]    Defendants dispute that Plaintiff was not able to send money to his family. (ECF 51). In support of this statement, Defendants provide a copy of Plaintiff's monthly account statement, which includes a personal gift of $200 to Naja Larson on December 23, 2020. (ECF 51-9).

[7]    Defendants argue that Plaintiff's contentions about retaliation are based on assumptions. (ECF 51, at p. 9). As an example, Defendants cite Plaintiff's testimony that he "came up with the assumption that these actions were being done in order to retaliate on [him] for filing grievances." (ECF 51-2, at pp. 39-40).

p. 43).  Plaintiff is unsure if any correctional officer saw him break the window and cut himself.  (*Id.*).  Plaintiff hit a button in his cell to notify prison staff that he was bleeding, yet no correctional officer immediately responded.  (ECF 51-2, at p. 44).  Defendant Nyce and other correctional officers eventually transported him to the psychiatric observation cell.  (ECF 51-2, at p. 45).  In the psychiatric observation cell, Plaintiff explained to Defendant Glushkow that deputies and staff were retaliating against him for filing grievances.  (ECF 51-2, at p. 45).  Defendant Glushkow said, "Look, Mr. Coit, I don't care.  I'm trying to go home for the weekend.  So, this has nothing to do with me."  (ECF 51-2, at p. 45).  Plaintiff then showed Defendant Glushkow a razor and proceeded to cut himself.  (ECF 51-2, at p. 46).  While in the psychiatric observation cell, he spoke to Defendant Sorber, who said that unless Plaintiff withdrew his grievances he would not help him and that he would "continue to allow staff [to] do whatever they do."  (ECF 51-2, at pp. 46-47).  Plaintiff did not testify that he filed a grievance related to this incident.  (ECF 51-2, at pp. 41-47).  Plaintiff was transferred from the psychiatric observation cell in late December.  (ECF 51-2, at p. 49).

When he left the psychiatric observation cell, Plaintiff was placed in a "hard cell."  (ECF 51-2, at p. 50).  Plaintiff described a hard cell as "either a cement bed frame or a metal bed frame" that minimizes the opportunity for an inmate to destroy the cell or engage in self-injurious behaviors.  (*Id.*).  While in a hard cell, Plaintiff was denied his hygiene items for three to four days, was not given a mattress, and the light was constantly illuminating.  (ECF 51-2, at p. 51).  Plaintiff testified that he had a conversation with Defendant Sorber in which Defendant Sorber told him that, unless he withdrew his grievances, he would not help Plaintiff and would "continue to allow staff to do whatever they do."  (ECF 51-2, at p. 47).  Plaintiff did not testify that he filed a grievance related to what Defendant Sorber said.  (*Id.*).

Additionally, Plaintiff contends that he had issues regarding his property.  (ECF 51-2, at p. 52).  On December 31, 2020, Plaintiff filed a grievance claiming that the following property was taken:  a TV, two pairs of sneakers, a fan, two rugs, one extension cord, a remote, sweatpants, sweat shorts, and his state ID.  (ECF 51-4).  However, the grievance does not discuss the conditions he was experiencing in his hard cell.  (*Id.*).  Plaintiff received a response to his grievance dated January 20, 2021, which indicated that certain items were destroyed because they were not his and that his fan was confiscated due to a "bad engraving."  (*Id.*).  Plaintiff filed an appeal but did not receive a response to the appeal.[8]  (ECF 51-2, at pp. 52-53).

On January 8, 2021, Plaintiff testified that he had a pending criminal matter but was denied the chance to participate in the hearing.  (ECF 51-2, at p. 53).  When Plaintiff asked to participate in the hearing, Defendant Olivieri responded, "I'm getting a lot of heat from upper management.  So, I'm not allowing you to leave

---

[8]    Defendants dispute that Plaintiff did not receive a response to his appeal and attached the response to their summary judgment motion.  (ECF 51-4).  The response, dated February 17, 2021, upholds the decision of the grievance officer.

right now." (*Id*.). When asked why, she said, "[L]isten, you have a lot of grievances and a lot of lawsuits. They said unless things disappear we are going to make sure you get sentenced to as much time as you can." (*Id*.). On January 8, 2024, Plaintiff filed a grievance regarding this incident that indicated that Defendant Olivieri said she was under a lot of "heat" over Defendant's missing property and if he would "forget" about it, she would make sure he got to court. (ECF 51-10). Plaintiff did not receive a response to this grievance, even though he followed-up with prison officials about it and submitted several requests.[9] (ECF 51-2, at pp. 53-54).

On January 13, 2021, Plaintiff hit the emergency button in his cell again. (ECF 51-2, at p. 55). Plaintiff expressed to a correctional officer who he identifies as John Doe that he was feeling suicidal. (*Id*.). John Doe became "very aggressive" and told Plaintiff that if he made him do work Plaintiff would "regret it." (ECF 51-2, at pp. 55-56). Plaintiff does not provide the name of the correctional officer involved in this incident. (*Id*.).

Plaintiff attempted to send mail, including mail requesting copies of his dockets and writing to his lawyers. (ECF 51-2, at pp. 57-58). On January 15, 2021, his mail was returned to him. (*Id*.). That same day, Plaintiff filed a grievance, which indicated that he received mail back for the fourth time and that the institution was violating its mail policy. (ECF 51-11, Ex. I). Plaintiff was told that the mail was returned because the envelopes did not have his return personal address.[10] (ECF 51-2, at p. 58). While Plaintiff's grievance indicates that he spoke to Defendant Olivieri about this issue, Plaintiff does not name any Defendants who hindered his ability to send mail.[11]

On January 17, 2021, Plaintiff was not allowed to participate in his scheduled law library session. (ECF 51-2, at p. 60). A person he identifies as John Doe told him that Deputy Terra[12] made it clear he would not be able to attend the law library. (ECF 51-2, at p. 61). Plaintiff filed a grievance indicating that he had not been able to attend the law library in over a month. (ECF 51-12). Plaintiff notes

---

[9]     Defendants contend that Plaintiff did receive a response to his grievance and that Plaintiff was not able to attend court because the hearing was rescheduled. (ECF 51-10). In support, Defendants provide an initial review response dated January 22, 2021 that provides Plaintiff's video court hearing was rescheduled by the courts for a future date. (*Id*.).

[10]    Defendants attach to their summary judgment motion the response to Plaintiff's grievance dated January 25, 2021, that indicates the institution's mail policy requires a return address and, therefore, the mailroom was correct in sending the correspondence back to Plaintiff. (ECF 51-11).

[11]    Plaintiff's deposition notes that he submitted a request to Defendant "Shinlin." (ECF 51-2, at p. 58). There is no Defendant Shinlin in this case. Plaintiff may be referring to Defendant Sealas, who was referenced in Plaintiff's complaint in factual allegations regarding Plaintiff's claimed inability to send mail. (ECF 2, ¶ 27). Regardless, Defendant Sealas/Seilus was dismissed from this action at the motion to dismiss stage. (ECF 15).

[12]    Defendant Terra was dismissed from this action at the motion to dismiss stage. (ECF 15).

that he spoke to several Defendants about this issue, but he does not allege that these Defendants blocked him from library access. (*Id.*). Plaintiff testified that he did not receive a response to this grievance, though he submitted multiple requests to grievance coordinators.[13] (ECF 51-2, at pp. 61-62). Plaintiff was subsequently placed on the law library list for January 21, 2021. (ECF 51-2, at p. 65).

On January 31, 2021, Plaintiff hit the emergency button again because he was feeling suicidal "due to being threatened by staff members to withdraw my grievances and stuff like that." (ECF 51-2, at p. 67). Plaintiff engaged in self-harm. (ECF 51-2, at p. 68). Defendant Gilliard responded after Plaintiff engaged in self-harm. (*Id.*). When Plaintiff told Defendant Gilliard he was suicidal, Defendant Gilliard said, "Go ahead. Kill yourself. You don't deserve to live because you're a snitch." (ECF 51-2, at p. 68). Plaintiff then began to cut his wrist with a razor in Defendant Gilliard's presence. (ECF 51-2, at p. 69). Defendant Gilliard then walked away from Plaintiff's door. (*Id.*). Plaintiff asked Defendant Gilliard to be transferred to the psychiatric observation cell but was not taken. (ECF 51-2, at pp. 69-70). Plaintiff eventually refused medical treatment because staff threatened him, saying, for instance, that he would be written up, that he would go to the hole, or that they would harm him physically. (ECF 51-2, at p. 71). Plaintiff did not identify by name any correctional officer who was threatening him. (ECF 51-2, at pp. 71-73). On February 1, 2021, Plaintiff filed a grievance regarding the incident when he was "depressed and suicidal", and Defendant Gilliard told him to "[g]o ahead and kill" himself. (ECF 2-1, at p. 26). That grievance further provides that Defendant Gilliard told him if he did not withdraw his grievance against Defendant Olivieri he would "regret" coming to this jail. (*Id.*). Plaintiff writes that he was in his cell cutting and bleeding for two hours and had to refuse treatment due to threats. (*Id.*). An initial review response dated February 9, 2021 provides that Officer Gilliard denied making such a statement, that Plaintiff did not make any mention of being suicidal to "unit psyc," and that Plaintiff has a history of making false claims against officers and staff.[14] (ECF 2-1, at p. 29).

On February 8, 2021, Plaintiff submitted a grievance averring he submitted a request to review his medical and mental health records for his ongoing litigation but was not allowed to do so.[15] (ECF 51-13). The grievance does not name any

---

[13]    Defendants attach an initial review response dated January 28, 2021 to their summary judgment motion that shows that Plaintiff was scheduled to attend the law library on January 17, 2021, but Plaintiff did not attend. (ECF 51-12).

[14]    In their summary judgment motion, Defendants write that, as it relates to incidents of self-harm, no grievances have been filed. (ECF 51, at p. 13). Additionally, Defendants argue that Plaintiff "refused to go to medical," even though it was offered. (ECF 51, at p. 8).

[15]    Defendants attach to their summary judgment motion an initial review response that provides there was no record of Plaintiff's request to review his records prior to the grievance he filed. (ECF 51-13). Additionally, it provides that medical records staff would be notified that Plaintiff wished to view his medical records. (*Id.*).

Defendants. (*Id.*). Plaintiff was then able to look at his medical records, though he was not allowed to make copies of them. (ECF 51-2, at p. 78). Plaintiff testified that a "medical records lady" he referred to as Jane Doe told him he was not permitted to obtain copies of his medical records. (*Id.*).

On February 16, 2021, about four or five correction officers came to Plaintiff's cell and conducted a search. (ECF 51-2, at p. 76). They told Plaintiff they were conducting the search because Defendant Olivieri said he was filing too many grievances on the staff. (ECF 51-2, at p. 76). Officers cuffed him, took him to the "body scanner" where there were no cameras present and began threatening Plaintiff and telling him that if he did not withdraw his grievances he would "get hurt really bad" and they would continue to search his cell and harass him. (*Id.*). Plaintiff submitted a grievance about this issue but did not receive a response.[16] (*Id.*).

On or about March 22, 2021, Plaintiff felt ill and asked to see a doctor. (ECF 51-2, at pp. 78-79). He filed a grievance about the incident indicating that while he was walking to medical, Sergeant Klemas[17] told him to button up his jacket.[18] Plaintiff testified that his claims related to this incident "got dismissed" when Defendant Klemas was dismissed from the case. (ECF 51-2, at p. 79). Plaintiff does not implicate any other Defendants in the incident, except to say he spoke about the incident to Defendant Olivieri and Nyce. (ECF 51-7, Ex. E).

Throughout his time at SCI-Phoenix, Plaintiff contends that he was not receiving responses to his grievances. On multiple occasions during his deposition, Plaintiff testified that he did not receive responses to grievances. (*See* ECF 51-2, at pp. 13, 15, 19, 31, 35-36, 38, 54, 61-62, 76). When he did receive some initial responses, Plaintiff testified that he did not receive responses to his appeals. (ECF 51, pp. 17-18, 52-53). He further testified that he submitted multiple requests to the grievance coordinator for copies and the status of his grievances, but she either never responded, or would say she never received those grievances. (ECF 51-2, at p. 36). Plaintiff testified that he asked about the status of his grievances both individually, and as a group. (ECF 51-2, at p. 54). Plaintiff also provided numerous request slips, and a grievance, indicating that he was not getting responses to his

---

[16]    Defendants argue in their summary judgment motion that Plaintiff filed no grievances with respect to claims of retaliation. (ECF 51, at p. 12).

[17]    Sergeant Klemas was dismissed from this action at the motion to dismiss stage. (ECF 15).

[18]    Defendants attach to their summary judgment motion an initial review response that provides Plaintiff was instructed to button his shirt, but he refused. (ECF 51-7, Ex. E). Plaintiff then chose not to receive medical attention by returning to the housing unit. (*Id.*).

grievances and/or appeals.[19]  (*See* ECF 2-1, at pp. 5, 15, 16, 19, 23-25, 34, 36, 44; ECF 2-2, at p. 4).

## LEGAL STANDARD

Rule 56 governs summary judgment motion practice.  Fed. R. Civ. P. 56.  Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id.* at 322.  After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[19]    Defendants contend that Plaintiff has received responses to each of his grievances and appeals. (ECF 51, at p. 12).  Additionally, Defendants attach the responses to their summary judgment motion.  (ECF 51-4; 51-5; 51-7; 51-10; 51-11; 51-12; 51-13).  These responses are dated and signed by a prison official. (*Id.*).  Defendants also submit a declaration of Kristina Owens, who is the Facility Grievance Coordinator of SCI-Phoenix.  (ECF 51-4).  The declaration provides that at SCI-Phoenix, grievance responses are sent to inmates through the in-house mail, which is picked up by mailroom staff, distributed to the housing unit, and then unit staff delivers the mail to the inmate.  (*Id.*).  It further declares that Plaintiff was provided with responses to his grievances and appeals.  (*Id.*).

declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

"[C]ourts must accord special care to pro se claimants." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 824 (3d Cir. 2020) (internal quotation marks and citation omitted). The court must liberally construe *pro se* filings, holding them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, "the same standards for summary judgment apply to *pro se* litigants." *Edwards v. Rice-Smith*, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (quoting *Watson v. Phila. Hous. Auth.*, 629 F. Sup\p. 2d 481, 485 (E.D. Pa. 2009)). As such, a *pro se* litigant is "not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion**.**

**DISCUSSION**

Defendants move for summary judgment on all of Plaintiff's claims and argue that Plaintiff has failed to present evidence sufficient to meet his burden of showing that his constitutional rights were violated, that Defendants were personally involved in violating Plaintiff's constitutional

rights, or that Plaintiff exhausted his administrative remedies.  (ECF 51).  This Court addresses each argument below.[20]

### *Lack of constitutional violations*

Plaintiff asserts that Defendants violated his rights under the Fourteenth Amendment's due process clause and under the Eighth Amendment's cruel and unusual punishment clause.[21]  The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  In analyzing a procedural due process claim, the first step is to determine if the interest is a "liberty" or a "property" interest. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Once the court determines that there is a protected liberty or property interest, "the question then becomes what process is due to protect it." *Id*. (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  The notion of due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481.[22]

The Eighth Amendment of the United States Constitution prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  "To prevail against prison officials on a claim that an

---

[20]     Plaintiff's complaint generally narrates his time at SCI-Phoenix.  (ECF 2).  This Court attempts to discern Plaintiff's claims to the best of its ability.

[21]     Plaintiff's complaint also asserts claims based on denial of education, denial to practice religion, intimate association, and First Amendment retaliation.  (ECF 2, at p. 7).  However, Plaintiff's summary judgment opposition only includes designated sections for Eighth Amendment and Fourteenth Amendment due process violations.  (ECF 53).  Therefore, this Court will address Plaintiff's Eighth Amendment and Fourteenth Amendment claims.  To the extent this Court construes Plaintiff's arguments as asserting other claims, they will be addressed later in this Memorandum Opinion.

[22]     To the extent that Plaintiff is attempting to assert a substantive Fourteenth Amendment due process claim, this Court finds that Plaintiff has not presented evidence sufficient to show that Defendants' conduct was "arbitrary" or "shock[s] the conscience," which encompasses "only the most egregious official conduct," such that a claim for violation of substantive due process could survive summary judgment. *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (quoting *Chaney v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)).

inmate's conditions of confinement violated the Eighth Amendment, the inmate must meet two requirements: (1) the deprivation alleged must be, objectively, 'sufficiently serious,' and (2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The first element is satisfied when an inmate is deprived of 'the minimal civilized measure of life's necessities.'" *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights." *Id*.

### Denial of property

Plaintiff contends that the following property was taken from him; *to wit*: a TV, two pairs of sneakers, a fan, two rugs, one extension cord, a remote, sweatpants, sweat shorts, and his state ID. (ECF 51-4). Under the Fourteenth Amendment, the "deprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy." *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010). Adequate post-deprivation remedies include filing a state tort action or using the prison's grievance process. *Id*; *see also Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (finding that the prison grievance program was an adequate post-deprivation remedy); *Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984) (noting that common-law remedies would provide adequate compensation for property loss). Here, Plaintiff had access to both the prison grievance process and the ability to file a state tort action.[23] Therefore, Plaintiff has not met his burden to show that his Fourteenth Amendment due process rights were violated by the alleged confiscation of his personal property.

---

[23]     Even if Plaintiff disputes the efficacy of the prison's grievance process, there is no dispute that he had access to state tort remedies.

Additionally, Plaintiff has not produced evidence to show that the confiscating of his property – a TV, cord, remote, fan, rugs, an ID, and certain clothing items – deprived him of "life's necessities," such that his Eighth Amendment rights were violated. *See Thomas*, 948 F.3d at 138; *see also Wongus v. Corr. Emergency Response Team*, 389 F. Supp. 3d 294, 301 (E.D. Pa. 2019) (declining to find an Eighth Amendment violation when Plaintiff's family photographs were confiscated). Since Plaintiff has failed to meet his burden to show that his constitutional rights were violated with respect to his alleged missing property, summary judgment is granted on Plaintiff's denial of property claim.

### Denial of visits

Plaintiff contends that he was unable to participate in video visitations on October 23, 2020, November 6, 2020, November 15, 2020, and November 27, 2020. (ECF 51-2, at pp. 12-20). The Fourteenth Amendment's due process clause "does not itself guarantee any interest in prison visitation." *Henry v. Dep't of Corr.*, 131 F. App'x 847, 849 (3d Cir. 2005). Further, the Supreme Court has "severely restricted the ability of states to create liberty interests benefiting prisoners, holding that the only protectable interests would be in remaining free from 'atypical and significant hardship[s]…in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). Additionally, "[c]ourts have held that a loss of visitation privileges is one of the 'ordinary incidents' of prison confinement." *Id.* In *Henry*, the United States Court of Appeals for the Third Circuit ("Third Circuit") held that a plaintiff could be permanently banned from contact visitation – a more lasting consequence than is at issue here. *Id.*; *see also Ware v. Morrison*, 276 F.3d 385, 387-88 (8th Cir. 2002) (finding that denying a prisoner visits from his wife for eighteen months did not implicate due process rights). Thus, even assuming that Plaintiff is arguing the state created a liberty interest in visitation, the loss of four video visits is not the

kind of "atypical and significant" hardship that would deprive Plaintiff of a constitutionally protected liberty interest. *Henry*, 131 F. App'x at 849. Rather, as recognized by the Third Circuit, it is one of the "ordinary incidents" of prison. *Id*. As such, Plaintiff has not proffered evidence sufficient to show that his Fourteenth Amendment due process rights were violated by the loss of visitation.

Moreover, the "withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not violate the Eighth Amendment. *Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003). In *Cordero v. Warren*, 612 F. App'x 650, 651-53 (3d Cir. 2015), the Third Circuit found that an inmate's Eighth Amendment rights were not violated when prison officials allegedly arbitrarily failed to reinstate visitation with the plaintiff's brother for six months and then allowed non-contact visits only. The Third Circuit noted in *Cordero* that "[s]uch a temporary suspension of visitation with one visitor does not violate 'civilized standards of humanity and decency.'" *Id*. at 654 (quoting *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010)). Similarly, denying Plaintiff the opportunity to have four video visits does not rise to the level of an Eighth Amendment violation. Since Plaintiff has not produced evidence to show that a limited denial of visitation violated his constitutional rights, summary judgment is granted on Plaintiff's denial of visitation claim.

*Conditions of confinement*[24]

Plaintiff contends that he was required to spend four days in complete confinement. (ECF 2-1, at p. 45). Plaintiff argues that during that period, he was not offered recreation time and did not receive mental health treatment. (*Id.*). Plaintiff's grievance regarding this experience indicates that his mental health condition was "worsening" because of this total confinement. (*Id.*).

As noted, to assert a violation of the Fourteenth Amendment's due process clause, a prisoner must identify a liberty interest, which only exists for an "atypical and significant hardship." *Williams v. Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014) (quoting *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002)). "It is well-settled that placement in administrative confinement will generally not create a liberty interest." *Id*. In *Williams*, the Third Circuit held that the plaintiff did not have a protected liberty interest when he was placed in restrictive housing for over three months with conditions "typical" of administrative custody. *Id.*; *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (finding that seven months in disciplinary confinement did not, on its own, violate a liberty interest); *Harris v. Christie*, 2010 WL 2723140, at *15 (D.N.J. July 7, 2010) (finding that there was no procedural due process claim when there was a projected delay in mental health treatment). Here, Plaintiff's contention that he spent four days in confinement, without recreation time or access to mental health treatment, is not an "atypical and significant hardship" sufficient to establish a liberty interest. As such, Plaintiff has

---

[24]    This section does not address Plaintiff's conditions of confinement claims that were not administratively exhausted, which will be addressed later in this memorandum. Additionally, this Memorandum Opinion does not address conditions of confinement claims or any other claims, that were added in Plaintiff's summary judgment opposition brief and are not in his complaint. *See Jones v. Treece*, 774 F. App'x 65, 67 (3d Cir. 2019) (explaining that plaintiffs generally may not amend their complaints through arguments in a summary judgment oppositions); *see also* Rule 56 (requiring factual positions at summary judgment to be supported by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

not produced evidence to show that his four-day confinement violated the Fourteenth Amendment's due process clause.

Similarly, Plaintiff's alleged conditions of confinement do not establish an Eighth Amendment violation. That is, the denial of recreation for four days does not rise to the level of a constitutional violation. *See Freeman v. Miller*, 615 F. App'x 72, 77 (3d Cir. 2015) (seven days without recreation did not violate the Eighth Amendment when responding to suicide threat); *Bacon v. Minner*, 229 F. App'x 96, 99 (3d Cir. 2007) (citing approvingly an Eighth Circuit case that held the denial of outdoor recreation for thirteen days was not cruel and unusual punishment); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."). Additionally, Plaintiff's lack of mental health treatment for four days does not constitute an Eight Amendment violation when Plaintiff's grievance only provides that his mental health was "worsening." *See Sides v. Law*, 283 F. App'x 930 (3d Cir. 2008) (finding no Eighth Amendment violation for individual who claimed he did not receive any meaningful mental health treatment for four and a half years, in part, because his disorder did not necessarily warrant treatment). As such, Plaintiff has not produced sufficient evidence to show that his Eighth Amendment rights were violated during four days of confinement. Accordingly, Defendants' motion for summary judgment is granted on Plaintiff's conditions of confinement claim related to his four days in confinement.

### *Personal involvement*

In a civil rights action, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As such, to maintain a viable claim, a plaintiff must present evidence sufficient to show that the defendants were personally involved in violating

the plaintiff's constitutional rights. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1990–91 (3d Cir. 1995). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence" and "must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. Plaintiff does not present evidence that any named Defendant was personally involved in several of his claims.

Plaintiff contends that he submitted several cash slips to pay for legal matters and to provide money to his family for the holidays, but that they were denied. (ECF 51-2, at pp. 32-34). However, Plaintiff does not name any Defendant who personally blocked him from submitting cash slips. (*Id*.).

Plaintiff also asserts that he was not able to review his medical records. (ECF 51-13, ECF 51-2, at pp. 77-78). Plaintiff did not identify the person who would not allow him to retain copies of his medical records, referring to that individual only as "Jane Doe" and a "medical records lady." (ECF 5-2, pp. 78).

Plaintiff contends that he was unable to set up a video conference or phone call with his lawyer. (ECF 51-2, at pp. 36-41). Yet, again, Plaintiff does not identify any Defendant who prevented him from contacting his attorney. (*Id*.). He testified that he followed up on the incident with "Miss Orlando." (ECF 51-2, at p. 38). Notably, Defendant Orlando has been dismissed from this matter.[25] (ECF 15).

---

[25] This Court notes that claims based on Plaintiff's lack of medical care in March of 2021, (ECF 51-7), the processing of his outgoing mail, (ECF 51-2, pp. 57-58; ECF 51-11), and his being denied access to the law library in January of 2021, (ECF 51-2, pp. 61-62; ECF 51-12), were dismissed at the motion to dismiss stage. (*See* ECF 15). At the time, this Court granted Defendants' motion to dismiss with respect to the primary individual involved in each of these incidents: Defendants Klimas, Seilus, and Terra. (*Id*.). Any other marginal connection that the Defendants who remain in this action may have to these incidents, such as being notified of the incident, does not show that these Defendants were personally involved in violating Plaintiff's constitutional rights. Additionally, the improper handling of grievances does not state a cognizable claim under Section 1983. *See Williams*, 566 F. App'x at 109; *Wongus*, 389 F. Supp. 3d at 301.

On November 24, 2020, Plaintiff contends that he pressed a button and requested to see a psychologist or psychiatrist because he was feeling suicidal. (ECF 51-2, at p. 23). Plaintiff testified that he told a correctional officer he was suicidal, and the correctional officer encouraged him to kill himself, at which point he broke a window and utilized glass to engage in self-injurious behavior. (*Id*.). However, Plaintiff cannot identify the officer who responded to him and, at his deposition, said it was "extremely fair" to say the officer is not a defendant in this case. (*Id*.). On January 13, 2021, Plaintiff contends that he hit his emergency button again. (*Id*. at p. 55). Plaintiff asserts that the correctional officer was aggressive and told Plaintiff he was not suicidal. (*Id*. at pp. 55-56). Plaintiff identifies this correctional officer only as "John Doe." (*Id*. at 55).

As Plaintiff has not produced evidence that any of the named Defendants were personally involved in violating his constitutional rights with respect to these incidents: submitting cash slips, reviewing medical records, contacting his attorney, or the November 24, 2020 and January 13, 2020 incidents of self-harm, Defendants' motion for summary judgment is granted on these claims.

### *Exhaustion of administrative remedies*

The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Pennsylvania, there is a three-step process for filing a grievance in prison: (1) initial review; (2) the appeal to the Facility Manager; and (3) a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004). If a plaintiff fails to complete any stage of that process, it is proper to grant summary judgment for defendants for failure to exhaust administrative remedies. *See Mack v. Klopotoski*, 540 F. App'x 108, 109 (3d Cir. 2013) (affirming summary

judgment when the plaintiff failed to provide the required documents to SOIGA). However, a prisoner must only exhaust administrative remedies that are "available." *Mack*, 540 F. App'x at 112; 42 U.S.C. § 1997e(a). "An administrative remedy is unavailable when a prison official prevents a prisoner from pursuing the prison grievance process." *Mack*, 540 F. App'x at 112. Here, Plaintiff argues that administrative remedies were not available.

*No grievances filed*

Defendants argue that no grievances have been filed with respect to some of Plaintiff's claims, including his placement in administrative custody on his transfer to SCI-Phoenix and his instances of self-harm. (ECF 51, at p. 12). In order to show that Plaintiff failed to exhaust his administrative remedies, and that the process was available to him, Defendants attached Plaintiff's numerous grievances to their summary judgment motion – showing that Plaintiff did have access to grievance forms – and provided a declaration from Kristina Owens ("Owens"), the Facility Grievance Coordinator at SCI-Phoenix. (ECF 51-14). Owens' declaration explains the grievance process, provides that Owens reviewed the grievance records for Plaintiff, and includes a list of responses that Owens declares were provided to Plaintiff. (*Id.*).

Plaintiff argues in his brief in opposition to summary judgment that he did not file grievances because the grievance process was unavailable to him. (ECF 53). In particular, his brief provides that Defendants "did everything in their power to prevent plaintiff from exhausting By [*sic*] denying plaintiff grievances, pens or other opportunities to file grievances." (ECF 53, at p. 7). However, Plaintiff's summary judgment brief is not evidence sufficient to rebut Defendants' assertions. *See Jones*, 774 F. App'x at 67 (explaining that plaintiffs generally may not amend their complaints through arguments in a summary judgment opposition); *see also* Rule 56 (requiring factual positions at summary judgment to be supported by citing to "particular parts of materials

in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"). Therefore, summary judgment is granted on any of Plaintiff's claims in which no grievance was filed – including any assertions Plaintiff makes about his conditions of confinement.

Notably, Plaintiff did not file a grievance about his conditions of confinement when he initially arrived at SCI-Phoenix. (ECF 51-2, at p. 12). When asked about it at his deposition, Plaintiff said "at that time it wasn't a serious offense so I did not file a grievance on him." (*Id.*). Additionally, Plaintiff did not file a grievance about the self-harm incident that occurred on December 22, 2020. (ECF 51-2, at pp. 41-46). Accordingly, Defendants' motion for summary judgment is granted on these claims.

*Lack of response to grievances*

Defendants also argue that Plaintiff received responses to all of his grievances, rendering the appeals process available to him. (ECF 51, at pp. 11-13). Defendants further argue that because Plaintiff did not avail himself of the full grievance process, he failed to exhaust his administrative remedies. (*Id.*). To support this assertion, Defendants attached to their summary judgment motion the responses they argue were provided to Plaintiff's grievances. (*See* ECF 51-4; 51-5; 51-7; 51-10; 51-11; 51-12). Additionally, Owens' declaration attests that: "At SCI-Phoenix, grievance responses are sent to inmates by being placed with the in-house mail, which is picked up by mailroom staff and then distributed to the appropriate housing unit. Unit staff then delivers the mail to the inmate." (ECF 51-14). Owens' declaration further attests that Plaintiff was provided with responses to his grievances. (*Id.*).

Plaintiff, however, maintained that he was not receiving responses to his grievances. He testified about this repeatedly at his deposition. (*See generally*, ECF 51-2., at pp. 13, 15, 17-19, 31, 35-36, 38, 52-54, 61-62, 76). Plaintiff also submitted numerous request slips – and a grievance – indicating that he was not getting responses to his grievances and/or appeals. (ECF 2-1, at pp. 5, 15, 16, 19, 23, 24-25, 34, 36, 44; ECF 2-2, at p. 4). As such, Plaintiff has demonstrated a genuine issue of material fact about whether he was receiving responses to his grievances.

If prison officials were not providing responses to Plaintiff's grievances, thereby preventing him from proceeding with the appeals process, further administrative remedies would have been unavailable to Plaintiff. *See Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (finding that if defendants told the plaintiff he had to wait for the termination of an investigation before filing a formal claim, and then did not inform the plaintiff that the investigation was complete, the remedy of filing a formal grievance would be unavailable); *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (finding that prison officials lack of timely response to plaintiff's grievance rendered the process unavailable).[26] Accordingly, a genuine issue of material fact exists as to whether Plaintiff has failed to exhaust administrative remedies on those claims for which Plaintiff filed a grievance and argues that he did not receive a response.

---

[26]     Unlike in certain cases that found administrative remedies were available, Plaintiff testified in his deposition that he continued to ask prison officials about his grievances and responses – and attached request slips that demonstrate the same. (*See* ECF 51-2, at p. 36.); *Brown v. Sprenkle*, 827 F. App'x 229, 232 (3d Cir. 2020) (finding that the plaintiff should have informed the prison that he had not received a response); *Mack*, 540 F. App'x at 113 (declining to find administrative remedies unavailable when plaintiff had not notified prison officials that a photocopy machine was broken). Additionally, Plaintiff presents more than bare assertions that he was not receiving responses to his grievances, as a number of request slips show that he was repeatedly asking for grievance responses. *But cf. Maclary v. Carroll*, 142 F. App'x 618, 620 (3d Cir. 2005) (finding that bare assertions plaintiff filed unanswered and unprocessed grievances and letter to prison officials on the matter did not constitute a genuine dispute of material fact).

For such claims, this Court will require additional briefing to resolve factual disputes. Exhaustion of administrative remedies is "a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013).  As a result, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id*. at 271.  When resolving factual disputes related to administrative exhaustion, this Court is required to provide notice to parties and an opportunity to respond, including by submitting any materials relevant to exhaustion.[27] *Paladino*, 885 F.3d at 211.  Therefore, this Court will require additional briefing, allowing parties to respond and submit additional materials, in order to determine if Plaintiff received responses to the grievances on his remaining claims and, as a result, whether administrative remedies were available.

### Remaining claims

Lastly, Defendants also move for summary judgment on Plaintiff's claims of:  (1) Eighth Amendment violations related to the incident of self-harm on January 31, 2021; and (2) Retaliation.

### January 31, 2021 self-harm incident

On January 31, 2021, Plaintiff contends that he expressed to Defendant Gilliard that he was suicidal, and that Defendant Gilliard responded: "Go ahead. Kill yourself. You don't deserve to live because you're a snitch." (ECF 51-2., at p. 68).  Plaintiff contends he then began to cut his wrist with a razor in Defendant Gilliard's presence.  (*Id*. at 69).  Plaintiff also contends that he

---

[27]    Pursuant to *Paladino*, this Court is not required to conduct a full-scale evidentiary hearing. 885 F.3d at 211.

asked to be removed from his cell and taken to the psychiatric observation cell, but that Defendant Gilliard walked away.[28]  (*Id*. at 69-70).

Defendants argue in their motion for summary judgment that no grievances have been filed with respect to Plaintiff's incidents of self-harm.  (ECF 51, at p. 13).  However, Plaintiff attached to his complaint what appears to be a copy of his grievance related to this incident.  (ECF 2-1, at pp. 26-29).  There is also an initial response attached to the grievance, but no indication of whether Plaintiff appealed, or received any response to any appeal.  (*Id*.).  Given the uncertainty about this grievance, and the fact that Plaintiff has maintained that he was not receiving responses to grievances/appeals, there is a genuine dispute of material fact about whether Plaintiff exhausted his administrative remedies with respect to this incident.

Additionally, there are genuine disputes of material fact sufficient to survive summary judgment on the issue of whether Defendant Gilliard violated Plaintiff's constitutional rights on January 31, 2021.  "The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs."  *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."  *Id.* (quoting *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009)).  A "particular vulnerability to suicide qualifies as a serious medical need" as does failing to meet the "serious need for mental healthcare."  *Id*.  Plaintiff's assertions that Defendant Gilliard knew Plaintiff was suicidal, watched him cut himself with a razor blade, encouraged him to kill himself, and then walked away while Plaintiff was asking for help, are sufficient to create genuine disputes of material fact about whether Defendant Gilliard was deliberately indifferent to Plaintiff's serious medical need.  *See also Hayes v. Gilmore*, 802 F. App'x 84, 89 (3d Cir. 2020) (finding that plaintiff

---

[28]     Plaintiff contends that he ultimately decided to refuse treatment because he was threatened by staff that if he accepted any medical treatment he would be punished.  (ECF 51, Ex. A, at pp. 70-71).

stated deliberate indifference and failure to protect claims under the Eighth Amendment when plaintiff had previously attempted suicide and remarked to prison officials they were lucky he did not have a razor, but defendants, aware of the first suicide attempt, allowed plaintiff to return to his cell where his bloody writing was on the wall, without a razor restriction); *Brown v. Garnette*, 2023 WL 4237081, at *4 (E.D. Pa. June 27, 2023) (finding that plaintiff stated an Eighth Amendment claim against prison officials when he was in a psychiatric observation cell, told defendants that he was trying to kill himself and wanted to die, was actively cutting himself, and defendants encouraged plaintiff to continue and walked away). Accordingly, since a genuine issue of material fact exist as to the exhaustion of Plaintiff's administrative remedy, Defendants' summary judgment motion is held in abeyance pending additional briefing on Plaintiff's Eighth Amendment claim against Defendant Gilliard related to the January 31, 2021 self-harm incident.

### Retaliation

Plaintiff contends that Defendants retaliated against him for filing grievances.[29] Specifically, Plaintiff asserts that because he was filing grievances: (1) on January 8, 2021, Defendant Olivieri denied him the opportunity to attend a court hearing; (2) on February 16, 2021, Defendant Olivieri told officers to search Plaintiff's cell, cuffed him, and then took him to a place without cameras to threaten him; (3) on January 31, 2021, Defendant Gilliard ignored his medical needs.[30] (ECF 51-10; ECF 2-1, at pp. 26-29).

---

[29]    Taking into consideration that Plaintiff is *pro se*, and, thus, his filings should be liberally construed, this Court construes Plaintiff's filings as proceeding with a retaliation claim. *See generally* ECF 53; *Erickson*, 551 U.S. at 94 (2007).

[30]    This Court will focus on the instances in which Plaintiff filed, or testified that he filed, a grievance suggesting that retaliation was occurring. *Green v. Burkhart*, 767 F. App'x 342, 346 (3d Cir. 2019) (finding that exhaustion was required on claims that prison officials retaliated against individuals for filing grievances).

On January 8, 2021, Plaintiff contends he had a hearing in a pending criminal matter but was denied the opportunity to attend. (ECF 51-2, at pp. 53-54). Plaintiff contends that Defendant Olivieri told him she was getting a lot of "heat" from upper management and so she was not allowing Plaintiff to leave. (*Id.*). Plaintiff testified that he asked her why he was not allowed to attend the hearing, and she responded, "listen, you have a lot of grievances and a lot of lawsuits" and that "unless things disappear we are going to make sure you get sentenced to as much time as you can." (*Id.*).

Similarly, on February 16, 2021, Plaintiff contends that four of five correctional officers came to his cell and told him they were conducting a search because Defendant Olivieri said "you're filing too many grievances on the staff." (ECF 51-2, at p. 76). Plaintiff further contends the officers cuffed him, took him to a body scan, and when there were no cameras present, began to threaten him by saying he was "going to get hurt really bad" and that they would continue to search his cell and harass him. (*Id.*).

Plaintiff filed a grievance about the January 8, 2021 incident, and argues he never received a response to it. (ECF 51-2, at pp. 53-54). Plaintiff also testified that he submitted a grievance about the February 16, 2021 incident and again never received a response. (ECF 51-2, at p. 76). Defendants disputed these contentions and attached to their summary judgment motion a response to Plaintiff's January 8, 2021 grievance, which provides that the Plaintiff's video hearing for January 8, 2021 was rescheduled for a future date. (ECF 51-10). Defendants also argue that Plaintiff never filed grievances related to his claims for retaliation. (ECF 51, at p. 12). While this Court understands that Defendants dispute whether Plaintiff filed and/or received a response to his grievances, and the reason Plaintiff did not participate in the hearing, Plaintiff has shown – through

deposition testimony and a grievance – that genuine disputes of material facts exist as to these issues.[31]

These disputes of material fact are sufficient to survive summary judgment on the issue of whether Defendant Olivieri retaliated against Plaintiff in violation of his constitutional rights.  To state a retaliation, claim under the First Amendment, Plaintiff must show that:  "(1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)) (internal quotation marks omitted).  .  There is no dispute that filing grievances is free speech protected under the First Amendment.  *See Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[P]risoners retain the constitutional right to petition the government for the redress of grievances.").[32]

In order to show that he suffered an "adverse action" Plaintiff must demonstrate that the action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Rauser*, 241 F.3d at 333 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). Denying a prisoner the opportunity to participate in court hearings is "sufficient to deter a person of ordinary firmness" from filing grievances.  Additionally, conducting a retaliatory cell search, cuffing, and threatening Plaintiff may constitute an adverse action.  *See Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (noting that a retaliatory search and seizure may be sufficient to constitute an adverse action).  Lastly, Plaintiff must show that there is a casual link between the exercise of his constitutional rights and the adverse action taken against him.

---

[31]    This Court more fully explained in a previous section the rationale for denying summary judgment based on failure to exhaust administrative remedies.

[32]    Defendants acknowledge this in their summary judgment motion. (*See* ECF 51, at p. 22.)

*Rauser*, 241 F.3d at 333.   For this, Plaintiff bears the initial burden of proving that his constitutionally protected conduct was "a substantial or motivating factor" in the decision to discipline him.   *Id*.   The burden then shifts to Defendants to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity. *Id*.   Here, Plaintiff contends that he was told by Defendant Olivieri that she would not let him attend his court hearing because she was experiencing "heat" from upper management because Plaintiff was filing a lot of grievances and lawsuits.   Additionally, Plaintiff contends he was told that Defendant Olivieri told correctional officers to conduct the search of Plaintiff's cell because he was filing too many grievances.   This allegation is sufficient evidence of a causal link between the exercise of Plaintiff's constitutional rights and the alleged adverse action and establish the existence of disputed facts and issues.

Similarly, this Court finds that there are genuine disputes of material fact preventing summary judgment on the issue of whether Defendant Gilliard retaliated against Plaintiff for filing grievances during the self-harm incident on January 31, 2021.   Plaintiff's grievance related to this incident centers on Defendant Gilliard telling Plaintiff that if he did not withdraw his grievance, he would regret coming into this jail.   (ECF 2-1, at p. 26).   Additionally, Plaintiff testified that when he expressed to Defendant Gilliard that he was suicidal, Defendant Gilliard said, *in part*, "[t]his is what you get from being a snitch for filing grievances."   (ECF 51-2, at p. 69). Encouraging Plaintiff to kill himself when he was suicidal and refusing to provide help is an "adverse action."   *See Brown*, 2023 WL 4237081, at *3 (finding that handing plaintiff a razor when he was in a psychiatric observation cell, encouraging him to kill himself, and refusing to intercede when he tried to do so, constitutes an adverse action).   Additionally, Plaintiff's assertion that Defendant Gilliard referenced Plaintiff's grievances and told him "[t]his is what you get from

being a snitch for filing grievances" is sufficient to establish a causal link. As such, these allegations are sufficient to establish that a genuine issue of material fact exists with respect to Plaintiff's claims that Defendant Gilliard retaliated against him during the self-harm incident on January 31, 2021.

For the reasons set forth, Defendants' summary judgment motion is granted, in part, on all claims except as to Plaintiff's Eighth Amendment claim against Defendant Gilliard related to the January 31, 2021 incident of self-harm, and Plaintiff's retaliation claims against Defendants Olivieri and Gilliard. As for these remaining claims, this Court finds that there is a factual dispute about whether Plaintiff has failed to exhaust his administrative remedies. Accordingly, this Court will require additional briefing on this issue. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.